Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 7375 | **DATE** | SEP 3 – 2002 |
| **CASE TITLE** | Debbie Forcia v. Jo Anne B. Barnhart, Commissioner of Social Security | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated in the attached Memorandum Opinion and Order, the plaintiff's motion for summary judgement is denied and the Commissioner's decision is affirmed. [Doc. #6].

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | SEP 05 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | | date mailed notice | |
| vg(lc) | courtroom deputy's initials | | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| Debbie Forcia | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 01 C 7375 |
| v. | ) |
| | ) HONORABLE DAVID H. COAR |
| Jo Anne B. Barnhart, | ) |
| Commissioner of Social Security | ) |
| | ) |
| Defendant. | ) |

SEP 0 5 200

## MEMORANDUM OPINION AND ORDER

Before this court is plaintiff's, Debbie Forcia ("Forcia"), motion for summary judgement pursuant to 42 U.S.C. § 405(g) seeks judicial review of a final decision of the defendant, Commissioner of Social Security ("Commissioner"), that found Forcia not disabled, and thus not entitled to Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423(d), and Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1382, 1382c. See 42 U.S.C. § 405(g).[1] For the following reasons, the plaintiff's motion is denied and the Commmissioner's decision is affirmed.

## Background

Forcia applied for DIB and SSI in February 1991, alleging disability due to memory problems caused by drug and alcohol abuse (Tr. 16, 63-66, 89, 127). The Agency denied this application initially and on reconsideration (Tr. 67-114). Forcia then requested a de novo hearing before than an administrative law judge (ALJ). Following the administrative hearing on June

---

[1] 42 U.S.C. § 1383(c)(3) incorporates 42 U.S.C. § 405(g) for SSI claims.

1

12, 1992, the administrative law judge (ALJ) Drzewiecki found Plaintiff disabled from January 1, 1989 through February 29, 1992, but not thereafter because Plaintiff no longer had a substance abuse or affective disorder after that date (Tr. 202-11). Plaintiff did not appeal that determination.

Then, in December 1992, Forcia filed a new application for benefits, alleging she was disabled since September 1992, due to drug and alcohol addiction and depression (Tr. 214-18, 229, 243). The Agency denied this application initially but granted it on reconsideration, on the basis of Plaintiffs alcohol abuse and depression (Tr. 270-87).

In 1996, Plaintiff was notified that her benefits would cease on January 1, 1997, due to Amendments in the Social Security Act which preclude an award of benefits when alcohol or drug abuse is material to a determination of disability (Tr. 289-94, 318-27). Plaintiff requested a hearing before an ALJ and alleged disabling conditions to chronic depression and hyper-thyroidism (Tr. 295). On June 9, 1998, ALJ Welsch conducted a hearing at which Plaintiff, who was represented by counsel, and a vocational expert (VE) testified (Tr. 42-61). On October 19, 1998, the ALJ issued her decision finding Plaintiff disabled, but not entitled to benefits because drug and alcohol abuse were material to the finding of disability (Tr. 16-38). The ALJ's decision became the final Agency decision when the Appeals Council denied Plaintiffs request for review (Tr. 8-9). Plaintiff seeks judicial review of the ALJ's decision.

**Standard Of Review**

The Agency's final decision is subject to judicial review pursuant to 42 U.S.C. § 405(g), which provides that the Agency's findings "as to any fact, if supported by substantial evidence, shall be conclusive." "Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401

(1971). This Court must accept the ALJ's findings if they are supported by substantial evidence, and may not substitute its judgment for that of the ALJ. Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir. 1986). If this court finds that the ALJ's decision is not supported by substantial evidence or is based on legal error, then it may reverse the ALJ's decision. 42 U.S.C. § 405(g); Eads v. Secretary of Dep't of Health and Human Servs., 983 F.2d 815, 817 (7th Cir. 1993)(stating "if the Commissioner commits an error of law, [a court] may reverse without regard to the volume of evidence ins support of the factual findings.")

### Statement of Facts

**A.    Vocational Background and Plaintiffs Testimony**

Plaintiff, who was born February 21, 1955, was forty-three years old on the date of the ALJ's decision (Tr. 31, 214). She graduated from high school and has past relevant work experience as a secretary (Tr. 46, 135).

Plaintiff testified she was nervous, shy, and paranoid, and had memory and concentration problems (Tr. 49, 56). She attested she last drank alcohol two or three years before her June 1998 hearing, and last took street drugs three years before her 1998 hearing (Tr. 49-50). She went to a Methadone clinic five days each week (Tr. 50). Plaintiff testified she was seeing a psychiatrist and tried antidepressants without success (Tr. 50, 57). She saw a counselor twice each week (Tr. 51). On a typical day Plaintiff awoke, got dressed, went to the clinic, cleaned her house, did the laundry, cooked, watched television, enjoyed reading and cross-stitching, and, until it died, walked her dog (Tr. 52-54). Plaintiff lived with her boyfriend (Tr. 53).

**B.    Vocational Expert (VE) Testimony**

The ALJ asked the VE a hypothetical question about the existence of unskilled jobs

3

available to a person of Plaintiffs age, education, and experience, who had no exertional limitations, but was limited to routine, repetitive work, that did not require constant interaction with supervisors, coworkers or the public (Tr. 58). The VE testified such a person could perform medium-level jobs in the local economy as a store laborer (3,200 jobs); laundry worker (1,200 jobs); and dish washer (1,100 jobs) (Tr. 58). The VE testified that such a person could also perform the light-level jobs of assembler (4,800 jobs); packer (2,200 jobs); and automatic machine tender (4,400 jobs) (Tr. 59).

**C.    Plaintiffs reports**

In a July 1996 activities questionnaire, Plaintiff reported she was able to do all household chores without assistance, went out shopping and to a clinic daily, and did not finish anything "unless it's very important" (Tr. 308). She reported she enjoyed being with friends and acquaintances, spent most of her time with her boyfriend, and found strangers worrisome. She denied drug or alcohol problems (Tr. 308). She indicated she read, did her hobbies, and watched television "A Lot" (Tr. 309).

**D.    Medical Evidence**

Prior to the Plaintiff's June 9, 1988 hearing, she had consistently alleged disability primarily on the basis of her drug and alcohol abuse (Tr. 127, 229). In the June 9, 1998 hearing, however, plaintiff alleged that she suffered from chronic depression and hyper-thyroidism

**Center for Addictive Problems Treatment Notes**

From August 1993 through July 1998, Plaintiff sought treatment for drug and alcohol addiction at the Center For Addictive Problems (CAPS) (Tr. 411-34). In November 1996, Plaintiff was noted to be tearful, discouraged, anxious, and dysphoric, and was diagnosed with

4

opiate withdrawal (Tr. 430). Her methadone dosage was increased, and in December 1996, she was noted to be "[d]oing great, smiling, enjoying things," had no symptoms of withdrawal and was stable (Tr. 431). In January 1997, Plaintiff called because she was upset about not being eligible for SSI benefits, but her physician noted she was dealing with it "very well" (id). In April 1997, Plaintiff reported dysphoria and anxiety, and "needed to sip an extra bottle last weekend" (Tr. 433). She also reported drinking two beers per night (j4).

In December 1997, Plaintiff was noted to be "abusing street Xanax" (Tr. 483). Her methadone dosage was increased. (id.) In January 1998, Plaintiff reportedly was "abusing Xanax and Clonidrine for one year, increasingly in the previous two to three months" (Tr. 484). Two weeks later she denied illicit drug use and was "[d]efinitely better" (Tr. 485).

In February 1998, Plaintiffs looked "terrific" with increased mood and exercising (Tr. 486). In May 1998, Plaintiff stopped taking sulfa and pyridium and noted that all symptoms, including intoxication, shakes, weakness and ataxia had stopped (Tr. 488).

**Other Medical Evidence**

In September 1996, Plaintiff saw Dr. Bridgeforth complaining of feeling cold and depressed (Tr. 373). Plaintiff reported she attempted suicide by taking an overdose of prescription medication (50 tablets). She did not, however, go to the hospital. On physical examination, Plaintiff was poorly hydrated and malnourished (Tr. 374). Dr. Bridgeforth expressed concern over Plaintiffs reported depression and suicide attempt, as well as her low weight (Tr. 375).

Dr. Margulis, a psychiatrist, also evaluated Plaintiff (Tr. 377). Plaintiff took the CTA and the "L" to arrive at the appointment. Plaintiff reported she had "problems with drinking, drugs,,

5

depression, and violence". Plaintiff indicated that she liked to come downtown, but it took her a long time because she had "to take a lot of buses and trains" (Tr. 378). On the basis of a mental status examination, Dr. Margulis found Plaintiff had fair judgment, insight, and general functioning and good impulse control. He indicated Plaintiff had a long history of "moderate depressive symptoms" and a history of drug and alcohol abuse (Tr. 379). Dr. Margulis diagnosed alcohol and drug dependence, moderate recurrent major depression, and personality disorder with histrionic, borderline, and narcissistic traits (Tr. 380).

In September 1996, state agency reviewing physicians concluded that, physically, Plaintiff could lift 50 pounds occasionally and 25 pounds frequently, and sit, stand, and walk for six hours each in an eight-hour workday (Tr. 382, 388).

In October 1996, Dr. Singh, a state agency psychiatrist, evaluated the evidence of record and concluded that Plaintiff had moderate depression with opiate use, and that substance addiction disorder was present (Tr. 322, 325). Dr. Singh also completed a functional capacity assessment (Tr. 389). He found Plaintiff not significantly limited in most categories of mental functioning, but that she had moderate limitations in her ability to maintain attention and concentration for extended periods, perform activities within a schedule, complete a normal workday and work week, interact appropriately with the general public, and set realistic goals (Tr. 389-90). Dr. Singh noted that Plaintiffs history was consistent with alcohol abuse and depression with an alleged suicide attempt (Tr. 391). Dr. Singh concluded Plaintiff was moderately limited with pace, concentration, and social adjustment in complex and detailed tasks, but was capable of performing simple, unskilled jobs (id).

In December 1996, a physician completed a questionnaire for the state agency (Tr. 392-

Disability Insurance Benefits ("DIB") under title II or Supplemental Security Income (SSI) under title XVI of the Social Security Act, "if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." Pub. L. 104-121, §§ 105(a), 105(b) (containing identical language in each section for title II DIB and for title XVI SSI benefits). Drug addiction or alcoholism is material to a finding of disability if the individual would not be found disabled if she stopped using drugs or alcohol. 20 C.F.R. §§ 404.1535(b), 416.935(b).

In this case, the Commissioner's determination that Forcia's drug addiction would be material to a finding of disability and therefore she is ineligible for DIB is supported by substantial evidence. The ALJ considered all the evidence of record and found that Plaintiff was disabled, but that her continued alcohol and drug abuse were material factors contributing to her disability.

Plaintiff challenges the ALJ's finding to the extent that alcohol and drug abuse was a material factor contributing to her disability. Specifically, Forcia argues that the ALJ "played doctor," in making Forcia's residual functional capacity (RFC) assessment or made medical judgments beyond her "ken" in concluding that Plaintiff would not be disabled if she did not abuse drugs and alcohol. Plaintiff criticizes the ALJ for engaging in some degree of speculation regarding her ability to work if she were not using drugs or alcohol.

In this court's view, however, the ALJ acted as directed by the regulations. See 20 C.F.R. §§ 404.1546, 416.946 ("For cases at the Administrative Law Judge hearing . . . level, the responsibility for deciding your residual functional capacity rests with the Administrative Law Judge"). Under the regulations, while the ALJ must consider the opinions of physicians in

9

indicating Plaintiff was unable to work due to depression (Tr. 459-60). They again provided no objective support for those conclusions (id.).

In November 1998 plaintiff was admitted to the hospital after she took a "large amount [of] doxepin along with other medications and alcohol" (Tr. 494). She was alert and oriented (id.). Plaintiff "had. . . been drinking" but refused to relate the amount of alcohol or medications she took (id.) Plaintiff also refused to answer questions regarding her history of drug and alcohol usage (Tr. 493). Neurological examination was normal, but Plaintiff had some loss of coordination and slurred speech due to drugs and alcohol (Tr. 493).

Dr. Notorangelo examined Plaintiff psychiatrically and for chemical dependence (Tr. 502). Plaintiff admitted to opiate dependence. He diagnosed major depressive disorder, recurrent, with suicidal gesture with serious intent, and opiate dependence with methadone maintenance. The physician transferred Plaintiff to a Mental Health Center for psychiatric stabilization and methadone maintenance (Tr. 501).

## Analysis

The plaintiff argues that the Commissioner's final decision to deny the plaintiff disability insurance benefits is not supported by substantial evidence. This court disagrees.

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c. In 1996, Congress amended the Social Security Act to preclude entitlement to disability benefits based on drug addiction or alcoholism. Pub. L. 104-121, enacted March 29, 1996, precludes an award of

94). The physician reported treating Plaintiff bi-weekly from May 1996 through November 8, 1996 (Tr. 392). The physician, who possibly was unaware of Plaintiff's history of drug and alcohol abuse, determined that the Plaintiff had a major depressive disorder (Tr. 394). Although Plaintiff could understand instructions, the physician opined she could not carry out instructions, respond appropriately to co-workers, or tolerate normal work pressures

In August 1997, Mark Thomas, a social worker at CAPS, reported that Plaintiff continued to experience debilitating depression (Tr. 435). He opined that Plaintiff was not able to perform full or part time work. In June 1998, a functional capacity assessment was completed in which the evaluator opined Plaintiff had moderate to marked limitations in all areas of mental functioning (Tr. 459- 60). The person who completed the form referenced letters by Dr. Maxwell and Carolyn Law, a counselor, to explain these conclusions (Tr. 461). In those letters, Dr. Maxwell and Carolyn Law indicated that Plaintiff was a patient at CAPS since June 1998, had tested "clean" on urinalysis on a long term basis, but was unable to work due to diagnosed recurrent major depressive disorder (Tr. 464-66).

In August 1998, Dr. Embar performed a consultative psychological evaluation (Tr. 471). Dr. Embar noted that Plaintiff reported she was filing for disability on the basis of chronic depression, was in psychiatric treatment and counseling, and "drinks an occasional beer". Plaintiff also reported that she overdosed on pills about one year earlier (Tr. 471). Dr. Embar diagnosed chronic depressive disorder, anxiety disorder, past history of methadone and cocaine abuse, and hypothyroidism (Tr. 473-474). He opined Plaintiff had fair to poor or no useful ability to do mental work-related activities (Tr. 474-77).

In September 1998, Carolyn Law and Dr. Maxwell repeated their June 1998 letter

7

making her RFC assessment, the assessment is not a medical determination, but is a determination based upon all the evidence. See Social Security Ruling (SSR) 96-Sp. Further, although an ALJ may rely on a medical source statement, a "medical source statement must not be equated with the administrative finding known as the RFC assessment." Id. Instead, the Ruling acknowledges that because "there will frequently be medical and other evidence in the record that will not be known to a particular medical source, a medical source statement may provide an incomplete picture of the individual's abilities." Id.

Here, the ALJ considered the medical source statements rendered by Drs. Embar and Shinderman and did not dispute the functional limitations those physicians found. The ALJ, however, read those opinions in conjunction with the remainder of the record, and reasonably concluded that the limitations they identified were directly related to Plaintiffs substance abuse (Tr. 28). The ALJ also considered the findings of Dr. Singh, a state agency psychologist, who reviewed the evidence and evaluated all of Plaintiff's conditions which included moderate depression, and substance addiction disorders (Tr. 319). Thus, in the ALJ's judgement, Dr. Singh's evaluation was by far the most complete of any physician of record since it considered Plaintiffs continued drug and alcohol abuse.

Plaintiff argues that no medical source attributed depression to substance abuse. The Commissioner is correct however, when he states that Dr. Singh found that Plaintiff had "moderate depression with opiate use" (Tr. 322). In addition, Dr. Singh described the Plaintiff as having a "depressed mood" of moderate severity, but, noting normal cognitive functioning and the ability to take care of herself, concluded Plaintiff was capable of simple, unskilled jobs (Tr. 391). The AU limited Plaintiff to unskilled, routine, repetitive work that did not require constant

interaction with others (Tr. 28). This RFC assessment, as the ALJ noted, was consistent with Dr. Singh's assessment (Tr. 29).

In this court's view, Dr. Singh's assessment provides substantial evidence supporting the ALJ's RFC assessment. See 20 C.F.R. §§ 404.1527(fJ(2), 416.927(fJ(2) (ALJ's consider the opinions of medical consultants in assessing the nature and severity of impairments). This case illustrates the difficulty of attempting to address the relationship between drug dependancy/addiction and psychological maladies by way of the regulations. For purposes of determining whether alcoholism or drug addiction would be a contributing factor material to the Commissioner's determination that the individual is disabled the ALJ must determine whether the individual would be disabled if she stopped using drugs and alcohol. But suppose the other disabling factors make it difficult to cease use of those substances? The answer to that question may not be relevant or knowable to the medical treaters, yet the ALJ is required to divine the answer. The task of the court is simply to determine whether the ALJ's resolution is supported by the record.

Plaintiff asserts that Drs. Embar and Shinderman did not indicate that the limitations they suggested were based on alcohol or drug abuse, and that the ALJ should have asked the physicians about Plaintiffs alcohol or drug abuse. But the ALJ reasonably determined that these physicians did not know about the nature and extent of Plaintiffs drug and alcohol abuse because Plaintiff provided false or misleading information to them (Tr. 29). For example, Plaintiff told Dr. Embar in August 1998, that she drank "an occasional beer" but quit abusing drugs on the methadone program and had been very consistent with the program (Tr. 471). Treatment notes from CAPS, however, demonstrate that Plaintiff continued abusing drugs and was very

inconsistent with treatment (Tr. 411-34). In November 1996, Plaintiff was diagnosed with opiate withdrawal (Tr. 430). In April 1997, Plaintiff reported drinking two beers per night (Tr. 433). In December 1997, Plaintiff looked "Awful" and was "abusing street Xanax" (Tr. 483). In January 1998, Plaintiff was reportedly "abusing Xanax and Clonidrine for one year, increasingly in the previous two to three months" (Tr. 484). The complete record reflects Plaintiff was very inconsistent with treatment recommendations. The above provides substantial evidence for the Commissioner's view that Dr. Embar was not aware of the nature and extent of Plaintiffs abuse of drugs and alcohol when he rendered his opinion.

Plaintiff argues that the ALJ found that the bulk of Plaintiffs mental limitations were caused by sedation from drug and alcohol abuse, and that such a finding was "wild speculation." Plaintiffs brief at 10, citing Tr. 27. The ALJ, however, did not make a make a ruling this effect but stated indicated that to the extent Plaintiffs deficiencies of concentration, persistence and pace were based on drug or alcohol abuse, Congress prohibited an award of benefits on that basis (Tr. 27). The ALJ did continue to evaluate Plaintiffs limitations apart from her alcohol abuse (Tr. 27-29).

Plaintiff also argues that the ALJ improperly considered Plaintiff's daily activities. Specifically, Plaintiff argues that the ALJ found she could do unskilled work because she could do basic daily activities. Plaintiffs brief at 12. But the AU did not make that finding. Instead, the AU considered Plaintiffs activities, as one of the four areas of functioning she was required to consider in evaluating the nature and severity of Plaintiffs mental impairment (Tr. 22-24). See 20 C.F.R. § 1520a(c)(3). In addition, the AU reasonably considered Plaintiff's daily activities as one factor in evaluating her credibility. See 20 C.F.R. § 404.1 529(c)(3)(i). Nowhere did the ALJ

12

hold, as Plaintiff asserts, that her ability to watch television and listen to the radio demonstrated Plaintiff could do unskilled work. See Plaintiffs brief at 13.

Finally, Plaintiff argues that the ALJ erroneously found Plaintiff did not have physical limitations. Plaintiffs brief at 13. The Plaintiff, however, does not develop this argument in any meaningful fashion but appears to rely on the state agency physician's opinion that Plaintiff could do medium work. Id. Even assuming that limitation were valid, the ALJ obtained vocational expert (VE) testimony regarding the types of jobs a person with Plaintiffs mental RFC could perform, and the VE identified thousands of jobs in the medium and light exertional categories that such a person could perform (Tr. 58-59). Thus, even if Plaintiff could only perform medium work, a finding not compelled by this record, the ALJ nonetheless obtained and relied upon VE testimony to meet the Agency's burden of identifying jobs Plaintiff could still perform (Tr. 30).

Contrary to Plaintiff's contentions, the ALJ did not make medical judgment,, but reasonably weighed all the physician opinions in formulating her RFC assessment.

## Conclusion

For the foregoing reasons, the plaintiff's motion is denied and the Commissioner's decision is affirmed.

Enter:

_David H. Coar_

David H. Coar

United States District Judge

Dated: September 3, 2002

13